**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4186-24

JAMES ELDER and SARAH
ELDER,

      Plaintiffs-Respondents,

v.

CREST UNION, LLC, CREST
UNION MANAGEMENT
ASSOCIATES, LLC, and
MITCHELL HARLEY,

      Defendants-Appellants.

_____

Submitted December 15, 2025 – Decided July 8, 2026

Before Judges Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3244-24.

Mark S. Carter, attorney for appellants.

Joel & Joel, LLP, attorneys for respondents (Richard A. Joel, Jr., on the brief).

PER CURIAM

Defendants Crest Union, LLC, Crest Union Management Associates, LLC, and Mitchell Harley appeal from an August 21, 2025 order denying their motion to dismiss plaintiffs James and Sarah Elder's[1] complaint and to compel arbitration. Based on our de novo review, we conclude that the arbitration clause is unenforceable and accordingly affirm.

I.

The parties entered two contracts in May 2022 regarding the renovation of the plaintiffs' home. The first consisted of three and a half pages with a two-page rider titled "General Conditions." It was prepared by Crest Union, and signed on its behalf by Harley as President, and executed by the plaintiffs on May 6th. The second contract, prepared by plaintiffs "to protect [them] and the home" was signed on May 16th by plaintiffs and again by Crest Union and Harley. It consisted of five pages, also with a rider called "General Conditions." Both contracts included the identical arbitration provision in paragraph eight of the "General Conditions" section, which addressed mediation and arbitration procedures for dispute resolution. It provided:

> If a dispute arising out of or relates to this Contract, or
> the breach thereof, and if the dispute cannot be settled
> through negotiation, the parties agree first to try in good

[1] Because plaintiffs share the same surname, we refer to them at times by their first names for clarity, and intend no disrespect in doing so.

A-4186-24

faith to settle the dispute by mediation administered by the American Arbitration Association under its commercial Mediation Procedures before resorting to arbitration or some other dispute resolution procedure. If they do not reach such solution within 60 days, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its commercial Arbitration Rules.[2]

Plaintiffs contended defendants' performance under the contracts was untimely and defective and sued them in June 2024. In the complaint, plaintiffs asserted claims for breach of contract, negligence, fraud, and violation of the Consumer Fraud Act. Instead of immediately moving to dismiss the complaint and compel arbitration, defendants instead filed a timely answer, denied all material allegations, asserted among other defenses that the matter was subject to arbitration, and also filed a counterclaim sounding in breach of contract.

Defendants first moved to dismiss the complaint and compel arbitration in April 2025, approximately ten months later. After considering the parties' written submissions and oral arguments, the trial court denied the motion by order dated May 19, 2025 and explained its decision in a written statement of

---

[2] It does not appear either party complied with the requirements of the arbitration clause that obligated them to negotiate first, and then attempt in good faith to resolve any dispute by mediation administered by the American Arbitration Association.

A-4186-24

reasons in which it concluded that the arbitration clause was unenforceable under Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014), because it did not clearly inform the plaintiffs they were waiving their right to pursue their claims in court or to a jury trial.

The court also expressed reservations regarding whether all defendants could be bound by the arbitration provision, given the identities of the signatories to the contract. On this point, it noted that Crest Union Management Associates was not named in the contract and thus it did not have the right to arbitrate plaintiffs' claims, since it was not a party to the agreement containing the arbitration clause. The court further observed that the complaint was unclear as to whether Harley was being sued in his individual capacity or solely as President of Crest Union. The court explained that to the extent Harley was being sued individually, he would not be entitled to enforce the arbitration provision because he seemingly executed the contract only in his corporate capacity.

Approximately three months later in late July, defendants renewed their motion to compel by filing a near identical application, except that they relied, in part, on portions of the deposition testimony of Sarah Elder. According to defendants, in that deposition, Sarah acknowledged that by proceeding to

4

arbitration, she understood she was relinquishing her right to appear in court and have the matter resolved at trial by jury. The court again denied defendants' application and explained its decision in an August 15, 2025 oral decision.

The court considered defendants' application as a motion for reconsideration and noted the only new evidence offered was Sarah Elder's partial deposition testimony.[3] The court found Sarah's deposition testimony irrelevant because under Atalese, the enforceability of an arbitration clause is determined by the language of the contract itself, not by the parties' subjective understanding or after-the-fact interpretation. On this point, the court specifically stated that Atalese required courts to examine and consider the "relevant contractual language" and to "determine whether mutual assent has been achieved."

Considering the arbitration provision in that context, the court noted that it did not mention, even in general terms, that the parties intended to waive their right to a jury trial or to pursue claims in court, and thus the provision failed to

---

[3] We agree with the court's characterization of the motion. We also note that defendants' notice of appeal does not list the court's May 19th order as an order to which they appeal. Notwithstanding, as discussed supra, we have applied a de novo rather than an abuse of discretion standard of review as the issue presented is a legal one, and reject defendants' arguments under either standard of review.

A-4186-24

satisfy Atalese's most basic requirement. The court also emphasized that Atalese hardly imposed a difficult burden on defendants, as all they needed to do was to simply include a sentence in the contract that stated, "[b]y agreeing to arbitration, you will waive your right . . . to have this matter resolved in court and/or by a trial by jury."

The court further explained its reasoning in an August 21, 2025 written decision in which it reemphasized the points it expressed orally, and further addressed why it considered defendants' reliance on Sarah Elder's deposition testimony unpersuasive. The court first noted a number of evidentiary deficiencies with defendants' application. Specifically, it observed that the only deposition excerpts defendants provided were from Sarah, and they provided no transcripts or sworn testimony from James, who was also a named plaintiff and party to the contract.[4]

The court reasoned that even if it were to accept defendants' position that Sarah understood she was consenting to arbitration and waiving her right to a jury trial, it could not reach a similar result as to James as defendants failed to provide any sworn testimony from him. The court also rejected defendants'

---

[4] We note that in addition to failing to include any testimony from James, the record contains only select portions of Sarah's deposition testimony.

6

assertion that the court's May 19th order was based on its finding that the plaintiffs did not sufficiently understand the arbitration provision and emphasized that its decision was based on the contract language, which it found "woefully deficient" and not Atalese-compliant.

The court again commented on the lack of clarity in the parties' contracts as to which parties were bound by the arbitration provision noting Crest Union Management Associates was not a party to the contract and it was unclear whether defendant Harley was being sued in his individual capacity or solely as President of Crest Union, LLC.  According to the court, that lack of clarity further undermined the enforceability of the arbitration clause.

## II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law."  Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)).  We therefore "need not give deference to the [legal] analysis by the trial court." Ibid. (alteration in original) (quoting Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019)).  In our review of an order compelling arbitration, we "construe

the arbitration provision with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016).

We do not review a court's reasoning; we review only the trial court's judgment or order. Bandler v. Melillo, 443 N.J. Super. 203, 210 (App. Div. 2015). In our analysis of plaintiffs' arguments on appeal, we therefore consider "only the propriety of the [order] entered by the trial court, not the reasoning underlying the court's decision." Ibid. (citing Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)).

In reviewing orders compelling arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (explaining "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes" (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002)). Arbitration, as a favored means for dispute resolution, is not, however, "without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001).

"Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable." Atalese, 219 N.J. at 441. A legally

enforceable arbitration agreement "requires 'a meeting of the minds,'" Id. at 442 (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)), and the effective waiver of a party's right to a jury trial "requires a party to have full knowledge of [their] legal rights and intent to surrender those rights." Ibid. (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). "Moreover, because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Id. at 442-43 (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011)).

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48. The mutual assent necessary for a valid arbitration agreement "requires that the parties have an understanding of the terms to which they have agreed." Atalese, 219 N.J. at 442. And "under New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Id. at 443 (alteration in original) (quoting Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)); see also Martindale, 173 N.J. at 96 (enforcing an arbitration agreement because, among other things, it "was clear and

unambiguous").  The Court held that an arbitration clause, "in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute."  Atalese, 219 N.J. at 447.  The Court noted, however, that "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights."  Id. at 444.

The Atalese Court found the arbitration agreement at issue was unenforceable because there was no "explanation that plaintiff [was] waiving her right to seek relief in court for a breach of her statutory rights."  219 N.J. at 446.  The Court noted that the clause stated the parties would submit their disputes to arbitration, but "[t]he provision d[id] not explain what arbitration [was], nor d[id] it indicate how arbitration is different from a proceeding in a court of law."  Ibid.

The Court again addressed the enforceability of an arbitration clause in Kernahan v. Home Warranty Administrator of Florida, Inc, 236 N.J. 301 (2019).  The clause at issue in that case was set forth in a section of the agreement entitled "MEDIATION."  Kernahan, 236 N.J. at 310.  The clause stated, in part, that "[t]he parties agree to mediate in good faith before resorting to mandatory arbitration in the State of New Jersey."  Ibid.  The clause also stated:

> Any and all disputes, claims and causes of action arising out of or connected with this Agreement . . . shall be resolved exclusively by the American Arbitration Association in the state of New Jersey under its Commercial Mediation Rules. Controversies or claims shall be submitted to arbitration regardless of the theory under which they arise . . . .
>
> [Ibid.]

In Kernahan, the Court reaffirmed the standard enunciated in Atalese, noting that to be enforceable, an arbitration agreement must be "the product of mutual assent, as determined under customary principles of contract law." Id. at 319 (quoting Atalese, 219 N.J. at 442). With these principles in mind, we address the parties' arguments.

## III.

Before us, defendants largely reprise their arguments that the facts in the record are distinguishable from Atalese because: 1) plaintiffs themselves prepared one of the contracts by copying the arbitration clause from the defendants' original contract, 2) both parties signed contracts containing the same clause, and 3) Sarah Elder testified she understood that by agreeing to arbitration she would be waiving her right to a jury trial. Defendants further contend that New Jersey law strongly favors enforcement of arbitration

11

agreements and that the trial court erred by focusing solely on the contract language, rather than the parties' subjective understanding and conduct.

Plaintiffs respond that <u>Atalese</u> requires courts to examine the contract language itself to determine if the parties reached a clear and unambiguous waiver of their judicial rights, rather than rely on one party's subjective understanding, and that the clause is silent on that critical issue and thus unenforceable. Plaintiffs argue in their merits brief before us, as they argued in their motion brief before the court below, that defendants' litigation conduct and delay constitute a waiver of any right to compel arbitration pursuant to <u>Cole v. Jersey City Med. Ctr.</u>, 215 N.J. 265 (2013), and that the renewed motion to compel arbitration was an improper motion for reconsideration raising no new evidence or citation to any authority the court overlooked.

We first point out that at no point before the court or us, do defendants contend the text of arbitration provision is <u>Atalese</u> compliant and specifically that it satisfies <u>Atalese</u>'s requirement for a clear and unambiguous waiver of the right to a court or jury trial. Rather, they attempt to distinguish <u>Atalese</u> factually based on the fact plaintiffs prepared one of the contracts and because Sarah Elder purportedly testified she understood arbitration would waive her right to a trial.

12

In any event, we are satisfied beyond any doubt that after applying Atalese's holding the court correctly concluded the arbitration clause is unenforceable because it failed to include a "clear and unambiguous" explanation of the rights waived, and specifically, plaintiffs' right to seek judicial remedies. As the court cogently explained twice, Atalese requires that an arbitration provision in a consumer contract must, at a minimum, clearly and unambiguously inform the parties that they are waiving their right to pursue claims in court or to a jury trial.

Here, the clause in both contracts is silent as to any waiver of judicial rights, stating only that disputes "shall be finally settled by arbitration administered by the American Arbitration Association in accordance with the provisions of its commercial Arbitration Rules." Nowhere does the clause specifically state that the parties are relinquishing their right to a court or jury determination. We are further satisfied the provision does not comport with arbitration provisions our Supreme Court previously validated. See Martindale, 173 N.J. at 96 (stating that "arbitration agreement not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action"); Griffin v. Burlington Volkswagen, Inc., 411 N.J. Super. 515, 518 (App. Div. 2010) (upholding an arbitration clause which stated

"[b]y agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes").

We are unpersuaded with defendants' attempt to distinguish Atalese because plaintiffs "drafted" the second contract. First, the record is undisputed that plaintiffs were not represented by counsel and it is clear she simply copied the language from the earlier contract prepared by defendants. More importantly, the fact that an uncounseled individual reproduces a defective arbitration clause in a home renovation project does not serve to cure its legal insufficiency under Atalese, nor can it establish mutual assent to a waiver of judicial rights. Stated differently, the requirement of clear notice of that right is an objective one, and the mere act of copying incomplete arbitration language does not satisfy the obligation to inform a party of the rights being relinquished when the clause at issue does not address that point consistent with New Jersey law.

We find equally unpersuasive defendants' reliance on Sarah Elder's deposition testimony regarding her purported understanding of the arbitration clause for at least four independent reasons. First, as noted, we agree with the court that the primary focus when determining the enforceability of an

14

arbitration setting between what appears to be two relatively unsophisticated parties of equal bargaining power is the contract language itself. Atalese does not require courts to determine whether an individual subjectively understood that he or she was waiving their right to a trial in court and agreeing to arbitrate. Instead, Atalese requires courts to examine the relevant contractual language, and based on that language determine whether mutual assent has been achieved. Here, simply, as we have noted, the arbitration clause's language is legally insufficient under Atalese.

Second, even if Sarah's individual subjective understanding was relevant, we note that the critical deposition testimony which defendants primarily, if not exclusively, rely does not establish that she understood she was waiving her right to a jury trial at the time of contracting. Indeed, a close examination of the limited deposition testimony provided, reveals the following colloquy:

> DEFENDANTS' COUNSEL: And did you understand that if you were to proceed through arbitration, you would not be going to civil court and would not have a trial by jurors. Do you understand that?
>
> SARAH ELDER: I do understand that, sir.
>
> DEFENDANTS' COUNSEL: You did understand that?
>
> SARAH ELDER: I do.

A-4186-24

[(Emphasis added).]

At best, this exchange, in which Sarah responds in the present tense, cannot be said to reflect her knowledge or understanding at the time the contract was executed. Such an interpretation is the only one consistent with the basic principle that English uses a tense system that distinguishes between past and present actions, connected to the time a statement was made. See Rodney Huddleston & Geoffrey K. Pullum, The Cambridge Grammar of the English Language Chapter 3 § 1.1 (2002). Because "understand" is stative, it necessarily reflects thought, not action, and thus use of the present tense supports the conclusion Sarah was referring to her understanding at the time of the deposition. If, however, she was referring to the time of contract formation, which defendants' counsel unsuccessfully attempted twice to have her concede, Sarah would have used the past tense to support the anteriority of her actions. Thus, even if such testimony were relevant, it would not establish the requisite mutual assent at the time of contracting.

Third, the record is devoid of any evidence reflecting the understanding of James Elder, who is a party to the contract and against whom defendants also seek to enforce the arbitration agreement. The absence of such evidence further supports the trial court's finding that there was no mutual assent to arbitrate by

16

both plaintiffs. Fourth, as the court correctly noted in its May 19th and August 21st decisions, defendant Crest Union Management Associates, LLC was not a party to the contract, and Harley seemingly was sued in his individual capacity, having signed the contract in his role as President of Crest Union, LLC.

In light of our decision, we need not address plaintiffs' alternative argument that defendants' conduct in answering the complaint, filing a counterclaim, conducting discovery, and any other actions, constituted a waiver of their arbitration rights under Cole.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-4186-24